

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/26/2013

| | |
|---|---|
| IN RE: § <br> JEREMY S MORAN; dba J MORAN & § <br> ASSOCIATES FOOT & ANKLE CLINIC § <br> PA § <br>    Debtor(s) § <br> § <br> § | CASE NO: 10-35955 <br><br><br><br><br> CHAPTER 7 |

## MEMORANDUM OPINION

Dr. Jeremy S. Moran must pay Trustee, Joseph M. Hill $2,080.81 for legal fees and expenses incurred as a result of Dr. Moran's willful failure to comply with this Court's February 20, 2013 Order (ECF No. 114).

### Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

### Background

Dr. Moran filed a voluntary chapter 13 petition on July 13, 2010, listing "J Moran & Associates Foot & Ankle Clinic, PA" (the "PA") as a "dba." ECF No. 88 at 1. Dr. Moran's chapter 13 plan was confirmed on March 14, 2011. Dr. Moran's plan proposed an approximate lump sum payment of $60,000.00 from an insurance settlement. The plan contemplated automatic dismissal if the lump sum payment was not timely made. When the actual settlement proceeds were only $25,000.00, the case was converted to a chapter 7 due to Dr. Moran's inability to fund the confirmed plan. Mr. Hill was subsequently appointed the Chapter 7 Trustee. ECF No. 112 at 1-2. On November 28, 2012, the Court authorized Mr. Hill's Application to Employ Cage, Hill & Niehaus, LLP, as Trustee's counsel. ECF No. 94.

Initially, Dr. Moran listed the assets of the PA on his Schedule B (but provided no itemization of the assets), and claimed the assets as exempt on his Schedule C as "tools of the trade," pursuant to Texas Property Code § 42.002(a)(4). ECF No. 88 at 1-2. He neither scheduled his interest in the PA, nor claimed his interest in the PA as exempt. ECF No. 88 at 1-2. Dr. Moran valued the PA's assets at $62,000.00 and claimed $17,646.00 of this amount as exempt. ECF No. 88 at 1-2. Woodforest National Bank ("Woodforest") filed a proof of claim (Proof of Claim No. 7), asserting that it had a perfected security interest in the property of Dr. Moran's PA, including accounts receivable, furniture, fixtures and equipment. ECF No. 112 at 2.

The § 341 Meeting of Creditors was held on October 2, 2012. Mr. Hill requested that within seven days of the § 341 Meeting, Dr. Moran provide the following documentation to allow Mr. Hill to determine the value of the PA's assets: (1) tax returns for the PA; (2) an itemization of the PA's accounts receivable; (3) the PA's Quick Book files; and (4) income statements and balance sheets for the PA. Mr. Hill also requested that Dr. Moran amend his schedules to remove the assets of the PA, and instead list the PA as an asset. Dr. Moran failed to comply with the request.

Mr. Hill filed his first Objection to Exemption on October 23, 2012, asserting that Dr. Moran could not claim the PA's assets as exempt because he did not have a direct ownership interest in the assets. ECF No. 88 at 2. Mr. Hill believed the interest in the PA was property of the Estate and that Dr. Moran did not claim his interest in the PA as exempt. ECF No. 8 at 2. Mr. Hill claimed that he had insufficient information to ascertain whether Dr. Moran's valuation of the PA's assets was accurate because Dr. Moran had not provided an itemization of the assets. ECF No. 88 at 2.

In response to Mr. Hill's objection, Dr. Moran amended Schedule B and listed the PA as an asset. ECF No. 105. Because the PA's assets consisted only of accounts receivable and business equipment, Dr. Moran believed the PA's total assets were worth less than the current outstanding balance on Woodforest's secured claim. ECF No. 112 at 3. Consequently, Dr. Moran listed the value of the PA as zero on his Schedule B. ECF No. 112 at 3. Dr. Moran also amended Schedule C, and changed his exemption scheme from the Texas state exemptions to the federal exemptions under 11 U.S.C. § 522(d). ECF No. 105. He claimed his interest in the PA as exempt under § 522(d)(6) as tools of the trade, and the §522(d)(5) wildcard exemption. ECF No. 106 at 2. He also scheduled the exemption value as zero on his Schedule C. ECF No. 106 at 2.

On December 12, 2012, Mr. Hill filed a second Objection to Exemption. ECF No. 106. Mr. Hill's second Objection indicated that he believed the PA may be worth more than the zero dollar value scheduled by Dr. Moran, and therefore objected to the exemption since the value of the PA may be more than can be exempted under §§ 522(d)(5) and (6). ECF No. 106 at 2. Mr. Hill also objected to Dr. Moran's characterization of the PA stock as a "tool of the trade." ECF No. 106 at 2.

On February 11, 2013, Dr. Moran filed a Motion to Compel Trustee to Abandon Assets; Alternatively, Motion to Pay Administrative Expense Under §§ 503/543, Motion to Compel Turnover of Exempt Assets, or, Alternatively, Voluntary Motion to Dismiss. ECF No 112. Dr. Moran claimed that the PA should be exempt and abandoned because its assets consisted of nothing more than accounts receivable and equipment, with a value less than the current outstanding balance on the Woodforest secured claim. ECF No. 112. Dr. Moran pled, in the alternative, that he should be awarded an administrative claim for his professional fees incurred

in generating accounts receivable, which he claimed was a preservation service to the Estate.[1] ECF No. 112 at 3. However, Dr. Moran still had not provided Mr. Hill with any information to ascertain whether Dr. Moran had equity in the PA above the allowed secured claim. ECF No. 113 at 2.

Subsequent attempts by Mr. Hill to obtain documentation on the PA were only partially successful. On February 20, 2013, the Court ordered Dr. Moran to provide Mr. Hill with copies of all financial documentation related to the PA for the period starting January 1, 2012 and ending January 31, 2013, by no later than March 6, 2013. ECF No. 114. The Order stated that Dr. Moran's failure to comply would result in a complete disallowance of his claimed exemption in the PA. ECF No. 114.

At the hearing held on March 20, 2013, Mr. Hill explained that although Dr. Moran turned over limited financial documentation, he failed to fully comply with the Court's Order. Dr. Moran still had not provided necessary data, including documentation regarding payroll records, documentation of leases related to the PA, details on insurance expenses and a list of the PA's active files.

Dr. Moran did not appear at the March 20 hearing. The Court entered an Order to Show Cause, ordering Dr. Moran to appear at the hearing scheduled for April 2, 2013, and show cause why he had not complied with this Court's prior Order. ECF No. 120. The Court again required that Dr. Moran comply with the February 20, 2013 Order by no later than April 2, 2013.

At the April 2, 2013 hearing, Mr. Hill reported that Dr. Moran still had not complied with the Court's order. Dr. Moran admitted that he had produced no documentation after entry of the

---

[1] Dr. Moran's Motion also sought to compel Mr. Hill to turn over the $25,000.00 in proceeds from the insurance settlement because Mr. Hill had not timely objected to Dr. Moran's claimed exemption of the settlement, and alternatively, sought to have the case dismissed if the Court found the PA to be an administrable asset of the Estate. ECF No. 112.

February 20, 2013 Order. In an effort to explain the insufficient documentation, Dr. Moran's counsel argued that Dr. Moran did not anticipate the extent of the requested financial documentation and, due to the age and volume of the data, he was without sufficient time to comply.

Additionally, Dr. Moran attempted to shift the blame to his wife for failing to produce the documents as she had agreed to do. Dr. Moran asserted that his wife, who is also his office manager, had previously collected the necessary documentation, but informed him that she would no longer assist him with collecting the documents. As a result, he alleges that he did not become aware that all of the required documentation had not been provided until approximately March of 2013.

After the April 2, 2013 hearing, the Court issued an Order To Show Cause, ordering Dr. Moran to personally appear at the hearing scheduled for April 17, 2013, to show cause why he should not be held in civil contempt of the Court's February 20, 2013 Order. ECF No. 120. The Court ordered that if Dr. Moran was found in civil contempt, his exemption would be disallowed, and he would be arrested pending full compliance with the February 20 Order. ECF No. 120. At the April 17 hearing, Mr. Hill informed the Court that he had received all requested documentation from Dr. Moran.

On May 20, 2013, Mr. Hill filed his Amended Motion to Withdraw Trustee's Objection to Exemption and Request for Reimbursement of Attorney's Fees and Expenses. ECF No. 126. Mr. Hill moved to withdraw his objection because based upon review of the documents provided by Dr. Moran, Mr. Hill believed that there was no equity in the PA. ECF No. 126 at 1. Mr. Hill requested that his legal fees and expenses, totaling $8,050.56, be paid by Dr. Moran for Dr. Moran's bad faith conduct in failing to respond to Mr. Hill's request for information. ECF No.

126. A hearing was held on May 24, 2013, to determine whether Dr. Moran should be ordered to pay Mr. Hill's requested legal fees. Dr. Moran filed his Brief in Response on June 15, 2013. ECF No. 130.

## Analysis

11 U.S.C. § 521(a)(3), requires that in a case in which a trustee is serving, the debtor must cooperate with the trustee as is necessary to enable the trustee to perform the trustee's duties under Title 11. *In re Aninao*, 2012 WL 3071130, at *3 (Bankr. S.D. Tex. July 27, 2012). The debtor is required to cooperate with any reasonable request that will assist the trustee in performing the trustee's duties. *Id*. The Bankruptcy Code does not provide a specific remedy for a debtor's failure to cooperate. *Id*.

Under 11 U.S.C. § 105(a), bankruptcy courts have inherent sanction authority to deter and provide compensation for a wide range of improper conduct, provided that the Court make an explicit finding of bad faith. *In re Pulliam*, 2011 WL 1332040, at *2 (Bankr. D. Mont. March 31, 2011). Bad faith must be shown by clear and convincing evidence. *In re Parsley*, 384 B.R. 138, 179 (Bankr. S.D. Tex. 2008).

Section 105 also gives bankruptcy courts civil contempt authority to provide remedies necessary to enforce the Bankruptcy Code. *In re Pulliam, 2011 WL 1332040*, at *3. These civil penalties must either be compensatory in nature, or be designed to coerce compliance with a court order. *Id*. In order to find a party in civil contempt, the movant must show a specific and definite violation of court order, by clear and convincing evidence. *Id*.

Under 11 U.S.C. § 521(a)(3), Dr. Moran had a statutory duty to cooperate with Mr. Hill's requests to enable Mr. Hill to perform his duties as the Chapter 7 trustee. It is apparent that Dr. Moran did not fully cooperate with the Mr. Hill's requests. It is plain that—at some point—Dr.

Moran failed, in bad faith, to comply with the Court's orders. However, the Court does not believe that Mr. Hill has met his burden of showing that Dr. Moran's non-cooperation rises to the level of bad faith conduct throughout the proceeding.

In an effort to accurately determine the value of the PA's assets, Mr. Hill requested that Dr. Moran provide the specified financial documentation within seven days following the § 341 Meeting. Mr. Hill also requested that Dr. Moran amend his schedules to reflect the PA itself as an asset, as opposed to scheduling the assets of the PA. Following Mr. Hill's first Objection to Exemption, Dr. Moran amended his schedules to list the PA as an asset. Additionally, while Mr. Hill was not successful in getting Dr. Moran's full cooperation, by the hearing on February 20, 2013, Dr. Moran had at least partially complied with Mr. Hill's request. Dr. Moran made at least some effort to cooperate with the Trustee's requests. For these reasons, the Court does not believe that Mr. Hill has met his burden of showing that Dr. Moran acted in bad faith throughout the proceeding.

Mr. Hill has however shown by clear and convincing evidence that Dr. Moran committed a specific and definite violation of this Court's February 20, 2013 Order. That non-compliance was in bad faith. Dr. Moran will be required to compensate Mr. Hill for his expenses incurred as a result of this violation.

Dr. Moran was ordered to comply with the Court's February 20 Order by March 6, 2013. He did not comply. Dr. Moran was then ordered to comply with the February 20 Order by April 2, 2013. Again, he did not comply. In fact, Dr. Moran did not comply until he was threatened with arrest in the Court's Order to Show Cause issued on April 2, 2013.

Additionally, Dr. Moran's excuse for his non-compliance is unpersuasive. Dr. Moran attempted to shift the blame to his wife, asserting that she was his office manager and was

responsible for maintaining the information requested by Mr. Hill.  Dr. Moran's wife had initially begun to gather the information requested by Mr. Hill, but subsequently informed Dr. Moran that she would no longer assist him in gathering the information.  Dr. Moran asserts that because his wife was responsible for this task, he was not aware until sometime in March of 2013 that the information provided was insufficient.  The Court's February 20, 2013 Order gave Dr. Moran notice that the information provided to Mr. Hill up until that point was insufficient.  Therefore prior to March 2013, Dr. Moran knew that the information provided was inadequate.

Dr. Moran's violation of the Court's February 20, 2013 Order resulted in increased costs to the Estate.  Sanctions in the form of Mr. Hill's legal fees are appropriate as compensation for Dr. Moran's contempt.  Mr. Hill submitted an itemized list of the fees incurred by his firm, which he asserts are a direct result of Dr. Moran's non-cooperation.  ECF No. 126-1.  The Court has determined that legal fees in the amount of $2,064.64, and expenses of $16.17 were incurred as a result of Dr. Moran's violation of its February 20 Order.  Mr. Hill will be compensated for legal fees and expenses totaling $2,080.81.

## Conclusion

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **August 26, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE